(Supreme Court, Appellate Division, Second Department.   July 27, 1905.)

1. BROKERS—DEALINGS WITH CUSTOMERS—POOL AGREEMENTS—KNOWLEDGE OF CUSTOMER.·

The terms of pool agreements pursuant to which stock is held by brokers on behalf of customers are not so far a matter of common knowledge that knowledge thereof can be imputed to a customer who knowingly purchases pool stock from a broker in the pool, but who is in fact ignorant of such terms.

2. SAME.

Brokers who are in a pool agreement with other brokers to carry certain stock for customers, by the terms of which the control of the stock is to be left in the control of a manager, may, notwithstanding such agreement, contract with a customer to purchase and carry the pool stock subject to his order.

Appeal.from Trial Term, Kings County.

Action by A. N. Ridgely against Talbot J. Taylor and others, doing business under the name of Talbot J. Taylor & Co.   From an order setting aside a verdict for plaintiff and from a judgment for defendant, plaintiff appeals.   Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, RICH, and MILLER, JJ.

I. R. Oeland (O. N. Brown, on the brief), for appellant.

John Henry Hammond (Russell H. Landale and Edward B. Boise, on the brief), for respondent James B. Taylor.

Philip J. Britt, for respondents Talbot J. Taylor and Foxhall P. Keene.

MILLER, J.   The plaintiff pleaded a refusal by the defendants to sell certain shares of stock as a breach of the ordinary stockbroker's agreement to purchase and carry stock subject to the customer's order.   It appeared that the stock in question was 1,000 shares of a much larger number purchased on account of a pool formed by an agreement signed by the defendants and several other brokers on behalf of customers.   The plaintiff's evidence tended to establish a contract between him and the defendants, pursuant to which the defendants were to purchase and carry for him said stock; it being understood, however, that the stock was pool-stock. His evidence tended further to establish the fact that the pool agreement was never submitted to him, and that it was agreed that he should be at liberty to sell the stock at any time he desired. The defendants claimed that the pool agreement which placed the pool stock in the control of a manager was submitted to the plaintiff, and that there was no agreement that he might sell independent of the pool.   This issue was submitted to the jury, and resolved by it in favor of the plaintiff, whereupon the court set aside the verdict and dismissed the complaint, on the theory that the law imputes knowledge of the general nature of a pool agreement, and that no valid agreement inconsistent therewith could be made, and that, if such an independent agreement could be made, there

94 N.Y.S.—69

was no consideration for it, and the plaintiff's cause of action was for deceit, and not breach of contract. The record simply discloses that decision on the motion to dismiss was reserved. It nowhere appears that such a motion was made, or upon what ground it was based if made; but, treating the motion as having been properly before the court, we think the learned justice erred in dismissing the complaint. The plaintiff's evidence established, if true, a distinct independent agreement to purchase, carry, and sell upon order 1,000 shares of stock, of which the signing of the pool agreement was a mere incident. We do not think that the terms of pool agreements are so far matter of common knowledge that knowledge of the terms of this agreement can be imputed to the plaintiff, who swears that he was ignorant of its terms, and that he had known of several pool agreements which permitted the members of the pool to sell independent of the pool. One of the defendants testified, "There was a private contract between me and Ridgely, by which he was to participate in a thousand shares of our stock," from which it would appear that the defendants, and not the plaintiff, were members of the pool. And, whatever may have been the terms of the pool agreement signed by the defendants, we can discern no reason why they could not make any agreement they chose with the plaintiff. The reasons which moved the learned justice to dismiss the complaint could properly be urged before the jury.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.